# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| In Re: Appeal of City of Philadelphia | : |
| | : |
| Property Address: 1314 Spring Garden St. | : |
| Philadelphia PA 19103 | : No. 419 C.D. 2019 |
| | : ARGUED: September 17, 2020 |
| Property Owner: Spring Garden Parking | : |
| Association | : |
| | : |
| Appeal of: City of Philadelphia | : |

BEFORE:  HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE J. ANDREW CROMPTON, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  November 23, 2020**

The City of Philadelphia appeals from an order of the Court of Common Pleas of Philadelphia County granting JSF Spring Garden, LLC's motion to quash the City's appeal from the decision of the City's Zoning Board of Adjustment (ZBA) granting JSF's application for a variance.  In concluding that the City lacked standing, the trial court also dismissed the City's appeal, with prejudice.  We reverse and remand this matter to the trial court for a decision on the merits of the City's appeal from the ZBA's decision.

Spring Garden Parking Association is the record owner of the subject property, located at 1314-1332 Spring Garden Street, Philadelphia, Pennsylvania, and designated as a "Center City Commercial Mixed-Use" zoning district.  For over thirty years, the property served as a surface parking lot.  (Aug. 23, 2019 Trial Court Op. at 1.)  In June 2018, equitable owner JSF applied for a variance under the

Philadelphia Zoning Code to demolish the structures located on the property and construct a seven-story building consisting of mixed retail and commercial storage uses contrary to the underlying zoning classification. (*Id*. at 1-2.) Additionally, the variance would permit JSF to deviate from the applicable dimensional requirements. The City's Department of Licenses and Inspections (L&I) refused the application.

Following JSF's appeal, the ZBA held a hearing at which witnesses in support of the project included JSF's president, an employee of JSF's parent company, an architect, a licensed professional planner, and a traffic engineer. Evidence in support of the project also included several petitions and letters, one of which was from the councilmember for the City Council district in which the property sits. (*Id*. at 2.)

In opposition to the project, a representative from the City Planning Commission, Paula Brumbelow Burns, appeared in person and informed the ZBA that the Commission's Civic Design Review Committee had not yet conducted a "civic design review" of the project.[1] The Zoning Code provides the following with respect to the sequencing of civic design review:

> L&I shall not issue a final decision on an application for any development that meets the criteria in Table 14-304-2 until review by the Civic Design Review Committee has been completed pursuant to the procedures in this subsection; provided, however, that, upon request of an applicant, L&I shall promptly issue any refusal or referral, without awaiting completion of review by the . . . Committee. Where L&I issues a refusal or referral on an

---

[1] A subcommittee of the Commission, the Committee "reviews and makes advisory recommendations on zoning applications regarding developments requiring Civic Design Review under § 14-304(5) [of the Zoning Code]." (Section 14-301(e)(.2) of the Zoning Code.) Generally, such projects have the potential for impact on the surrounding community. Although design review is advisory, applicants are encouraged to accept the results of the review and incorporate them into the design. (Section 14-304(5)(d) of the Zoning Code.)

application for a development that meets the criteria . . . and the applicant files an appeal to the [ZBA] pursuant to § 14-303(15), the [ZBA] shall not commence a hearing on the application until review by the . . . Committee has been completed pursuant to the procedures in this subsection.

(Section 14-304(5)(b)(.1)(.b) of the Zoning Code.)

In asserting the Commission's opposition to the project, Burns stated:

Chairman and Members of the Board, this property is indicated for Commercial use on the Comprehensive Plan. The Central District Plan specifically recommended that this property be used to the full extent of CMX[-]4 District [Center City Commercial Mixed-Use District] and create a vibrant mixed[-]use corridor.

This intersection has several transit lines creating the potential for a Transit Oriented Development District, which the Central District commented on. We feel that this application does not meet the spirit of the district or the goals of the Phila[.] 2035 plans.[2] Additionally this applicant has yet to participate in the CDR [civic design review] process. Accordingly, we recommend the requested variance not be granted.

(Oct. 3, 2018 ZBA Hearing, Notes of Testimony "N.T." at 52-53; Reproduced Record "R.R." at 107a-08a) (footnote added).

---

[2] "Phila[.] 2035 plans" refers to a comprehensive plan or plans developed by the Commission for managing growth and development in the City. Pursuant to Section 4-604(a) of the Philadelphia Home Rule Charter, "Physical Development Plan of the City," the Commission may prepare comprehensive plans as a whole or in successive parts corresponding to major geographical sections of the City or to functional subdivisions of the subject matter of the plan, as the Commission may determine. Additionally, "[t]he Commission shall transmit the Physical Development Plan or any part and any modification thereof to the Mayor and to the Council." *Id.*

At the conclusion of the hearing, the ZBA unanimously granted, with proviso, JSF's application for a variance.[3] The City appealed to the trial court,[4] listing "City of Philadelphia" as the appellant. (Oct. 18, 2018 Appeal to Trial Court; R.R. at 6a.) In the interim, JSF appeared before the Commission to complete the "civic design review." Subsequently, JSF filed a motion to quash the City's appeal for lack of standing, averring that no one appeared on behalf of either City Council or the City at the zoning hearing. (Dec. 31, 2018 Motion to Quash, ¶18; R.R. at 19a.) The trial court granted JSF's motion and dismissed the City's appeal with prejudice, determining that the City lacked standing to bring the appeal and that it waived any right to bring an appeal by failing to appear at the hearing. In so doing, the trial court engaged in an in-depth analysis of the City's alleged lack of procedural and substantive standing and Burns' alleged inadequacy as a legal representative of the City authorized to voice formal opposition to the application for variance. The City's appeal to this Court followed.

On appeal, the City presents the following issues: (1) whether the trial court erred in determining that the City lacked procedural standing where a representative of the City appeared at the ZBA hearing and testified against granting the variance; and (2) whether the trial court erred in determining that the City lacked substantive standing where a representative of the Commission appeared and testified that the variance would undermine the goals of the City's Comprehensive

---

[3] The conditions included: obtaining a permit from L&I three years from the decision; conducting construction in accordance with approved plans; implementing curb cuts, trash and recycling receptacles, and bollards in accordance with engineering plans; providing venting through the roof; and limiting retail use to first floor only. (Oct. 3, 2018 ZBA Decision; R.R. at 7a.)

[4] Pursuant to the Local Agency Law, 2 Pa.C.S. §§ 551-555, 751-754, and the Judicial Code, 42 Pa.C.S. §§ 101-9913, appeals from the decisions of governing bodies rendered in their adjudicatory capacity are taken to the trial courts. 2 Pa.C.S. § 752; 42 Pa.C.S. § 933(a)(2).

4

Plan.[5]  In addressing these issues, we note generally that one must have procedural standing in order to be a party to a zoning hearing (*e.g.*, asserted a right to participate sufficiently early) *and* substantive standing (*e.g.*, possess a sufficient interest in the outcome of the litigation to be allowed to participate).  *Worthington v. Mount Pleasant Twp.*, 212 A.3d 582, 590 (Pa. Cmwlth. 2019).  However, there is nothing in the applicable statutes, the City's Zoning Code, or case law suggesting that there is a "procedural standing" rule in Philadelphia.

Both the First Class City Home Rule Act (Home Rule Act)[6] and Chapter 14 of the City's Zoning Code govern zoning in the City.  *Scott v. City of Phila., Zoning Bd. of Adjustment*, 126 A.3d 938, 948 (Pa. 2015); *Plaxton v. Zoning Bd. of Adjustment*, 213 A.3d 374, 378 (Pa. Cmwlth. 2019).  Pursuant to Section 17.1 of the Home Rule Act,[7] municipalities adopting a home rule charter "shall have and may exercise all powers and authority of local self government and shall have complete powers of legislation and administration in relation to its municipal functions."  53 P.S. § 13131.1.  Section 1-100 of the Philadelphia Home Rule Charter provides: "The City shall have the power to enact ordinances and make rules and regulations necessary and proper for carrying into execution its powers; and such ordinances, rules and regulations may be made enforceable . . . ."  (Section 1-100 of the Charter.)  Accordingly, the Zoning Code was "enacted pursuant to the powers granted and limitations of the [Charter]."  (Section 14-103 of the Zoning Code.)

---

[5] An issue of statutory construction presents a pure question of law and our standard of review is *de novo* and our scope of review is plenary.  *Spahn v. Zoning Bd. of Adjustment*, 977 A.2d 1132, 1142 (Pa. 2009).

[6] Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. §§ 13101-13157.

[7] Added by Section 2 of the Act of November 30, 2004, P.L. 1523, No. 193.

In contrast to the Pennsylvania Municipalities Planning Code (MPC),[8] the Zoning Code neither provides a definition of who is a party nor limits who may appear and participate in a zoning hearing.[9]  *Scott*, 126 A.3d at 948.  However, Section 14-303(15)(a)(.1) of the Zoning Code provides:

> (a) Appeals to [ZBA].
>> (.1) Any final order, requirement, decision, or determination made by L&I pursuant to this Zoning Code may be appealed to the [ZBA] by any person or organization affected by the decision or by any department or agency of the City.

(Section 14-303(15)(a)(.1) of the Zoning Code.)  Additionally, "[i]n all public hearings before the [ZBA], any agency of the City shall have the power to appear and to present facts and information to assist the [ZBA] in reaching a decision." (Section 14-303(14)(k) of the Zoning Code.)

---

[8] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[9] Section 913.3 of the MPC, "Parties appellant before the board," provides that "appeals . . . may be filed with the board in writing by the landowner affected, any officer or agency of the municipality, or any person aggrieved."  Added by Section 89 of the Act of December 21, 1988, P.L. 1329, No. 170, 53 P.S. § 10913.3.  Section 908(3) of the MPC provides that "[t]he parties to the [zoning board] hearing shall be the municipality, any person affected by the application who has made timely appearance of record before the board, and any other person including civic or community organizations permitted to appear by the board."  53 P.S. § 10908(3).  Persons who fail to appear or otherwise object before a zoning hearing board, *other than municipalities*, lack standing and cannot appeal an adverse decision to the trial court.  *Leoni v. Whitpain Twp. Zoning Hearing Bd.*, 709 A.2d 999 (Pa. Cmwlth. 1998).  Stated another way, "the municipality has been expressly designated [as] a party before the zoning hearing board and . . . its being a party is not conditioned upon its entering an appearance before a zoning hearing board."  *Lower Paxton Twp. v. Fieseler Neon Signs*, 391 A.2d 720, 723 n.1 (Pa. Cmwlth. 1978).  Therefore, for purposes of standing under the MPC it would be inconsequential that a representative of the municipality failed to appear at hearing because "to impose the burden of requiring a municipality to participate in every hearing for a variance lest it waive its right to challenge the zoning board's action would be unreasonable."  *Id*. at 723.  Of course, the municipality and landowner must intervene in the trial court to retain their party status and to preserve the right to take a further appeal.

6

As for who may appeal from the ZBA to the trial court, our Supreme Court has held that the MPC's standing rules do not apply. *Scott*, 126 A.3d at 939-40. Consequently, our focus here is on the standing provisions found in the Home Rule Act and the Zoning Code. The plain language of Section 17.1 of the Home Rule Act limits standing to two classes—aggrieved persons and the governing body. *Spahn v. Zoning Bd. of Adjustment*, 977 A.2d 1132, 1143 (Pa. 2009). Section 17.1 provides:

> In addition to any aggrieved person, the governing body vested with legislative powers under any charter adopted pursuant to this act shall have standing to appeal any decision of a zoning hearing board or other board or commission created to regulate development within the city. As used in this section, the term "aggrieved person" does not include taxpayers of the city that are not detrimentally harmed by the decision of the zoning hearing board or other board or commission created to regulate development.

53 P.S. § 13131.1. In turn, the Zoning Code's standing provision provides:

> (b) Appeals to the Courts.
>> (.1) A final decision made by the [ZBA] or the Commission pursuant to this Zoning Code may be appealed to a Pennsylvania Court of Common Pleas *by any aggrieved party or by City Council* pursuant to [Section 17.1 of the Home Rule Act] . . . within 30 days of the decision or such other time as may be provided by law.

(Section 14-303(15)(b)(.1) of the Zoning Code) (emphasis added).

As the Supreme Court observed, "[t]he intent of Section 17.1 [of the Home Rule Act] was to give the specific power of standing to appeal a decision of a zoning hearing board within a city of the first class to the governing body vested

7

with legislative powers and to 'aggrieved persons.'"[10] *Spahn*, 977 A.2d at 1143. Pursuant to the Zoning Code, the governing body vested with legislative powers in Philadelphia is City Council.[11] *O'Neill v. Phila. Zoning Bd. of Adjustment*, 169 A.3d 1241, 1245 (Pa. Cmwlth. 2017), *appeal denied*, 186 A.3d 943 (Pa. 2018). Accordingly, pursuant to both the Home Rule Act and the Zoning Code,[12] any aggrieved party or City Council may take an appeal to the trial court from a ZBA decision.[13] *Id*.

In the present case, the City clearly is not City Council. Additionally, it is undisputed that City Council did not authorize the City's appeal to the trial court. However, the City does not rely upon the automatic standing provision in Section 17.1 of the Home Rule Act applicable to City Council as the governing body. Instead, the City claims standing as an aggrieved party.

Notably, there is nothing in the Home Rule Act or relevant case law suggesting that the City had to secure the approval of City Council in order to take an appeal as an aggrieved party/person. Additionally, there is no requirement that

---

[10] This is consistent with Section 752 of the Local Agency Law, which provides that "[a]ny *person aggrieved* by an adjudication of a local agency who has a *direct interest* in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals . . . ." 2 Pa.C.S. § 752 (emphasis added).

[11] "The City Council serves as the legislative body for the City of Philadelphia. The powers of the City Council relating to this Zoning Code are established in §§ 1-101 and 2-307 of the Philadelphia Home Rule Charter." (Section 14-301(2)(a) of the Zoning Code.)

[12] Where there are conflicting provisions concerning standing to appeal a zoning decision, the Home Rule Act takes precedence and controls over the Zoning Code. *O'Neill*, 169 A.3d at 1244 n.5 (citing *Spahn*, 977 A.2d at 1144).

[13] No determination as to aggrievement need be made when the governing body exercises its automatic standing to appeal from ZBA decisions. *See Spahn*, 977 A.2d at 1149 (where the appellants were not a governing body, the relevant question was whether they were an "aggrieved person" under Section 17.1 of the Home Rule Act).

8

an aggrieved party/person have appeared before the ZBA as a prerequisite to the right to appeal. In *O'Neill*, 169 A.3d at 1245, this Court clearly distinguished City Council from a councilmember in holding that an individual councilmember who was not personally aggrieved could not rely upon the automatic standing afforded by Section 17.1 of the Home Rule Act to individually challenge a variance granted for a property in his district. Consequently, to require appearance before the ZBA as a prerequisite to the right to appeal would mean that not only aggrieved parties or persons, but City Council—as a body—would have to appear at the zoning hearing. Obviously, that would constitute an absurd result which the General Assembly could hardly have intended. "[A] court's proper role in interpreting and construing a statute is to determine the intent of the General Assembly." *Spahn*, 977 A.2d at 1142 [citing Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a)].

As for whether the City constitutes an aggrieved party/person, we note that Section 17.1 of the Home Rule Act "does not define the term 'aggrieved person' except to state what an aggrieved person is not—a taxpayer who has not been detrimentally harmed by a decision, *i.e.*, taxpayers generally." *Spahn*, 977 A.2d at 1143. However, as for who constitutes an "aggrieved person" under Section 17.1, the Supreme Court has held that "[t]he General Assembly intended for the term 'aggrieved person' [to be used] as it is generally understood and defined in *William Penn [Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280 (Pa. 1975)]." *Scott*, 126 A.3d at 949. "Under *William Penn*, a party is aggrieved if the party can show an interest that is substantial, direct, and immediate." *Id*. A party's interest is substantial where a challenged action has a discernable adverse effect upon its interest beyond "the abstract interest of all citizens in having others comply with the

9

law." *William Penn*, 346 A.2d at 282. A party's interest is direct where there is a causal connection between the challenged action and the harm to its interest. *Id.* A party's interest is immediate where that causal connection between the challenged action and the harm alleged is not remote or speculative. *Id.* at 283.

As a threshold matter, the City can be an aggrieved party/person. Section 1-103(1)(i) of the Zoning Code defines "person" as "[a]n individual, partnership, corporation, or association, including those acting in a fiduciary or representative capacity whether appointed by a court or otherwise." The City is a municipal corporation, created by the state legislature.[14] *Ortiz v. Commonwealth*, 655 A.2d 194, 198 (Pa. Cmwlth. 1995), *aff'd*, 681 A.2d 152 (Pa. 1996).

As for whether the City satisfied the criteria for aggrievement as set forth in *William Penn*, the City had a clear interest in challenging the ZBA's decision granting a variance within the City's territorial limits and in confirming that a variance followed strict compliance guidelines. Zoning is exercised pursuant to a municipality's police power as a land-use control device to prevent people from using property to the detriment of the general welfare. Zoning is not for the furtherance of purely private interests, but instead for the public benefit. Consequently, zoning should reflect community planning. *Nat'l Land & Inv. Co. v. Kohn*, 215 A.2d 597, 611 (Pa. 1965). Additionally, the power to grant a variance is a limited power not intended to override a municipality's exclusive authority to regulate land use by enactment of an ordinance or zoning code. As evidenced by the criteria for granting a variance applicable to the City, Section 14-303(8)(e)(.1)(.a)-

---

[14] In Section 1 of what is called the General Municipal Law, the General Assembly divided the Commonwealth's cities, by population, "for the purpose of legislation regulating their municipal affairs, the exercise of certain corporate powers, and having respect to the number, character, powers, and duties of certain officers thereof . . . ." Act of June 25, 1895, P.L. 275, *as amended*, 53 P.S. § 101.

(.h) of the Zoning Code, and most municipalities, Section 910.2 of the MPC,[15] a variance is only to be granted in highly limited circumstances so as not to rewrite an ordinance or zoning code parcel by parcel.

Where, as here, the equitable owner sought a variance that the City views to be contrary to the spirit or goals set forth in the City's comprehensive plans with respect to a Transit Oriented Development District, the City had the requisite "substantial, direct, and immediate" interest necessary to be an aggrieved party. *See Spahn*, 977 A.2d at 1151 (citing *William Penn*, 346 A.2d at 280). Notably, one of the criteria that must be satisfied in order for the ZBA to grant a variance provides that "[t]he grant of the variance will not adversely and substantially affect the implementation of any adopted plan for the area where the property is located[.]" (Section 14-303(8)(e)(.1)(.g) of the Zoning Code.) Consequently, notwithstanding City Council's automatic standing and discretion not to challenge every variance, the City can be aggrieved independently by virtue of the infringement on the terms of its ordinance and its comprehensive plan.

Accordingly, we reverse the trial court's order and remand this matter to the trial court for a decision on the merits of the City's appeal to the ZBA.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[15] Added by Section 89 of the Act of December 21, 1988, P.L. 1329, No. 170, 53 P.S. § 10910.2.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of City of Philadelphia   :
   :
Property Address: 1314 Spring Garden St.   :
Philadelphia PA 19103   : No. 419 C.D. 2019
   :
Property Owner: Spring Garden Parking   :
Association   :
   :
Appeal of: City of Philadelphia   :

# **O R D E R**


AND NOW, this 23rd day of November, 2020, the order of the Court of Common Pleas of Philadelphia County is hereby REVERSED. This matter is REMANDED to the trial court for a decision on the merits of the City of Philadelphia's appeal to the City of Philadelphia's Zoning Board of Adjustment.

Jurisdiction relinquished.


 

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge