# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Madeline Shikomba, individually and as : 
an officer of North of Washington : 
Avenue Coalition, Vashty Bandy, : 
William Smith, Annette Barberi, : 
Zheng Rong, : 
                            Appellants : 
                                  : 
             v. :     No. 1667 C.D. 2018 
                                  :     ARGUED: March 15, 2021 
Philadelphia Zoning Board of : 
Adjustment and KOJEPX LLC : 

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge 
                 HONORABLE ELLEN CEISLER, Judge 
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY** 
**SENIOR JUDGE LEADBETTER**                     **FILED: April 27, 2021**

        Objectors, Madeline Shikomba (individually and as an officer of North of Washington Avenue Coalition), Vashty Bandy, William Smith, Annette Barberi, and Zheng Rong, appeal from an order of the Court of Common Pleas of Philadelphia County that affirmed the decision of the City of Philadelphia's Zoning Board of Adjustment (ZBA) granting an application for use and dimensional variances filed by KOJEPX LLC (Applicant or Glass) under the Philadelphia Zoning Code and denying Objectors' appeal from the ZBA's decision. We reverse.

        The subject property at 2147 Catherine Street is zoned RSA-5 Residential and situated on an undersized lot of approximately 900 square feet, less than the 1,440 square feet currently required in that zoning district. Applicant

proposes to demolish the existing structure and to construct an attached, mixed-use, three-story commercial/residential structure to be used as a sit-down restaurant on the first floor with two dwelling units on the upper floors. That proposal is intertwined with Applicant's adjacent corner property at 2149 Catherine Street,[1] which currently has a coffee shop on the first floor (Ultimo Coffee), offices on the second floor, and Glass's residence on the third floor. Aaron Ultimo owns and operates Ultimo Coffee, a public-private economic development corporation (PIDC) with a small footprint in its existing space at 2149 Catherine Street with fewer than twenty seats. The PIDC was charged with creating eight jobs but managed to create ten. (ZBA Finding of Fact "F.F." No. 8.)

When Glass bought the adjacent property at 2149 Catherine Street, he described it as dilapidated, a shell, and a drug corner. He knocked it down and built a new building, which is "beautiful and done really well." (F.F. No. 14.) As for the subject property, Glass testified that it took him four years to buy it from the Philadelphia Housing Authority and that his "intention always was to doublewide each of these spaces." (F.F. No. 15.) Hence, Glass proposes to expand Ultimo Coffee into the new structure by breaking through the party wall and accessing additional space on the new ground floor thereby creating a sit-down restaurant spanning both properties. To that end, he applied to the City's Department of Licenses and Inspections for permission to execute the proposal. The Department denied the application because restaurants and two-family residential uses are prohibited in the RSA-5 Residential District; no more than one principal use is permitted per lot whereas two uses are proposed; a minimum open area of 25% is

---

[1] Glass testified that Applicant owns four corners within a block. (ZBA Finding of Fact "F.F." No. 13.)

2

required whereas an open area of 14% is proposed; and a minimum rear-yard depth of 9 feet is required whereas a rear-yard depth of 4 feet, 11 inches is proposed.

Following a hearing, the ZBA voted unanimously to grant the variances with a proviso prohibiting outdoor dining in the existing loading zone. Without taking additional evidence, the trial court after oral argument issued a single-page order denying Objectors' appeal and affirming the ZBA's decision to grant the variances. Subsequently, the trial court stated in its opinion filed pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure that Objectors lacked standing to appeal.[2] In the alternative, the trial court determined that the evidence supported the ZBA's decision to grant the variances.

On appeal, we first consider Objectors' argument that Applicant waived any objection to standing and that the trial court improperly raised the issue *sua sponte*.

---

[2] In determining that Objectors lacked standing to appeal, the trial court concluded:

> [Objectors] have not established a harm that is real and concrete. [They] object to [Applicant's] proposal because "it would increase traffic, trash, and noise, all of which is undesired" and "alters the essential character of our neighborhood." [Objectors'] Brief at 3. [They] also cite testimony from other community members at the ZBA hearing. Vashty Bandy objected "to smells and garbage that come along with a commercial kitchen." Annette Barberi testified that "she wants the area to maintain its quiet residential character." [*Id*.] at 4. These speculative objections are unsupported by the evidence. [Objectors] have not made any objective statements of fact demonstrating that they are aggrieved by the proposed project. Even if there was evidence to support [their] claims, [their] concerns regarding noise, smells, and character of the neighborhood are common to all citizens of Philadelphia[.]

(Trial Court's Feb. 27, 2019 Op. at 4-5.) Accordingly, the trial court concluded that Objectors failed to establish an interest in the outcome greater than any other citizen under *Spahn v. Zoning Board of Adjustment*, 977 A.2d 1132, 1155 (Pa. 2009). (*Id*. at 5.)

3

Both the First Class City Home Rule Act (Home Rule Act)[3] and Chapter 14 of the Zoning Code govern zoning in the City. *Scott v. City of Phila., Zoning Bd. of Adjustment*, 126 A.3d 938, 948 (Pa. 2015). The Zoning Code neither provides a definition of who is a party nor limits who may appear and participate in a zoning hearing. *Id.* However, Section 17.1 of the Home Rule Act[4] limits those who have standing to appeal from the ZBA to the trial court to two classes—aggrieved persons and the governing body. *Spahn v. Zoning Bd. of Adjustment*, 977 A.2d 1132, 1143 (Pa. 2009). Section 17.1 provides:

> In addition to any aggrieved person, the governing body vested with legislative powers under any charter adopted pursuant to this act shall have standing to appeal any decision of a zoning hearing board or other board or commission created to regulate development within the city. As used in this section, the term "aggrieved person" does not include taxpayers of the city that are not detrimentally harmed by the decision of the zoning hearing board or other board or commission created to regulate development.

53 P.S. § 13131.1. In turn, the Zoning Code's standing provision provides as follows:

> (b) Appeals to the Courts.
>
> > (.1) A final decision made by the [ZBA] or the Commission pursuant to this Zoning Code may be appealed to a Pennsylvania Court of Common Pleas by any aggrieved party or by City Council pursuant to [Section 17.1 of the Home Rule Act] . . . within

---

[3] Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. §§ 13101-13157.

[4] Added by Section 2 of the Act of November 30, 2004, P.L. 1523 No. 193, 53 P.S. § 13131.1.

> 30 days of the decision or such other time as may be
> provided by law.

Zoning Code, § 14-303(15)(b)(.1).

In practice, the fact that the ZBA does not limit who may appear or participate in its hearings means that a determination as to whether a party is aggrieved cannot be made until *after* the ZBA issues its decision. *Scott*, 126 A.3d at 950. However, a challenge to an appellant's standing to appeal the ZBA's decision must be made at the first available opportunity in the trial court. *Id.* In order "to appeal from the [ZBA] to the trial court, an appellant must demonstrate in the trial court, *if challenged*, that he is aggrieved" and, therefore, has standing. *Id.* (emphasis added). "A party is not necessarily aggrieved simply because he or she appeared or participated before the [ZBA]." *Id.* at 949. To establish standing, an appellant, if challenged, must satisfy the criteria for aggrievement set forth in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280 (Pa. 1975). *Id.*

Additionally, because the issue of standing is not an issue of subject matter jurisdiction, a court cannot raise it *sua sponte*. *Hertzburg v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 46 n.6 (Pa. 1998); *Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513, 523-24 (Pa. Cmwlth. 2018). Accordingly, a party can waive its opportunity to challenge standing. *Scott*, 126 A.3d at 950; *Liberties Lofts LLC*, 182 A.3d at 523.

In the present case, Applicant did not file a motion to quash Objectors' appeal in the trial court. Instead, Applicant merely stated in its brief that "[Objectors], in failing to articulate any particular or relevant aggrievance beyond speculative and remote concerns, effectively waived any argument in opposition that they could make before [the trial court]." (Applicant's Sept. 13, 2018 Brief to Trial

5

Court at 3; Reproduced Record "R.R." at 74a.) Otherwise, Applicant concentrated on the merits of the ZBA's decision without raising standing. For example, Applicant did not request that the trial court dismiss Objectors' appeal for lack of standing. Instead, Applicant requested only that the trial court affirm the ZBA's decision. (*Id*. at 23; R.R. at 94a.)

At oral argument before the trial court, Applicant discussed the neighbors' general concerns about development in the neighborhood and asserted that they had no specific concerns about the subject property. Additionally, Applicant emphasized efforts to eliminate blight in the area through endeavors such as Ultimo Coffee, which has a mandate from the PIDC to create local jobs. However, Applicant focused on the perceived need to expand the commercial space due to the changing neighborhood without addressing standing. (Nov. 7, 2018 Trial Court Transcript, Notes of Testimony "N.T." at 10; R.R. at 133a.)

We conclude that Applicant waived the issue of standing. Although Applicant at oral argument before this Court attempted to dismiss the statement in its brief to the trial court as an inconsequential failure to use magic words such as "standing," its decision not to challenge standing at the first available opportunity constituted a waiver. Applicant's belated and oblique reference to Objectors' lack of specific concerns was insufficient to raise a challenge to their standing. Because the issue of standing is not jurisdictional and can be waived, the trial court erred in raising the standing issue *sua sponte*.

We turn now to Objectors' argument that the record lacks substantial evidence to support the ZBA's finding that Applicant would suffer unnecessary hardship absent the variances granted by the ZBA.

The Zoning Code provides:

6

The . . . Board shall grant a variance only if it finds each of the following criteria are satisfied:

(.a) The denial of the variance would result in an unnecessary hardship. The applicant shall demonstrate that the unnecessary hardship was not created by the applicant and that the criteria set forth in [Zoning Code] § 14-303(8)(e)(.2) (Use Variances) below, in the case of use variances, or the criteria set forth in [Zoning Code] § 14-303(8)(e)(.3) (Dimensional Variances) below, in the case of dimensional variances, have been satisfied;

(.b) The variance, whether use or dimensional, if authorized will represent the minimum variance that will afford relief and will represent the least modification possible of the use or dimensional regulation in issue;

(.c) The grant of the variance will be in harmony with the purpose and spirit of this Zoning Code;

(.d) The grant of the variance will not substantially increase congestion in the public streets, increase the danger of fire, or otherwise endanger the public health, safety, or general welfare;

(.e) The variance will not substantially or permanently injure the appropriate use of adjacent conforming property or impair an adequate supply of light and air to adjacent conforming property;

(.f) The grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;

(.g) The grant of the variance will not adversely and substantially affect the implementation of any adopted plan for the area where the property is located; and

(.h) The grant of the variance will not create any significant environmental damage, pollution,

erosion, or siltation, and will not significantly increase the danger of flooding either during or after construction, and the applicant will take measures to minimize environmental damage during any construction.

Zoning Code, § 14-303(8)(e)(.1)(.a)-(.h).

With regard to use variances in particular, the Zoning Code provides:

To find an unnecessary hardship . . . the . . . Board must make all of the following findings:

(.a) That there are unique physical circumstances or conditions (such as irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions) peculiar to the property, and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of this Zoning Code in the area or zoning district where the property is located;

(.b) That because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property;

(.c) That the use variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(.d) That the hardship cannot be cured by the grant of a dimensional variance.

*Id.*, § 14-303(8)(e)(.2)(.a)-(.d).

8

As for dimensional variances, the Zoning Code states that "[t]o find an unnecessary hardship . . . the . . . Board may consider the economic detriment to the applicant if the variance is denied, the financial burden created by any work necessary to bring [any existing] building into strict compliance with the zoning requirements[,] and the characteristics of the surrounding neighborhood." *Id.*, § 14-303(8)(e)(.3).

In the present case, the ZBA concluded that Applicant satisfied the criteria necessary for the requested variances. In support, it found as follows.

> 8. The Property is an undersized lot adjacent to an existing commercial use.
>
> 9. The proposed structure would be consistent with the existing structures on adjacent properties on either side.
>
> 10. The proposed ground floor use would merely expand an established commercial use existing on the adjacent, corner property. The proposed structure's upper floors would be used for residential dwelling units.
>
> 11. The Board concludes that these circumstances are sufficient to establish the hardship required for the granting of a variance.
>
> 12. The Board additionally concludes that the existing hardship was not self[-]imposed, that the variances requested are the minimum necessary to afford relief, and that the development will not detrimentally impact the public health, safety or welfare.

(F.F. Nos. 8-12.)

Before the ZBA, Glass asserted that the alleged unnecessary hardship for the subject property was the inability to expand the commercial enterprise located in the adjacent property in order to remain competitive as a local business in a

9

growing neighborhood. (Jan. 23, 2018 ZBA Hearing, N.T. at 5; R.R. at 34a.) In support, he stated that "[w]hat's driving this request is largely the expansion of Ultimo Coffee." (*Id*. at 4-5; R.R. at 33a-34a.) "[T]his application would effectively just allow Ultimo Coffee to expand, break through the party wall and just have additional space at the ground floor of 2147 Catherine." (*Id*. at 6; R.R. at 35a.) Glass summarized:

> And this is really about staying competitive. A Starbucks just opened, a Wawa is about to open, there's a 7-Eleven and I have seen so many times people walked into Ultimo Coffee, they looked around, they can't find a seat and they walk out and that's a problem. And then, additionally, Ultimo Coffee doesn't have any food service. There are pastries and whatnot, but there's no cooked food. And I think in order for that business to stay competitive[,] we need to be able to build out a kitchen and have food service and have more seating. You know, so that's what this is about. It's about supporting a local South Philly business.

(*Id*. at 8; R.R. at 37a.)

Notably, Glass did not allege that he could not use the subject property as zoned and the ZBA made no findings on that point. Additionally, he did not establish or rely upon any alleged blighted condition of the subject property. Assuming *arguendo* that it is blighted, its poor condition does not equate to an inability to use the property as zoned.

Additionally, Glass misplaces his reliance on factors such as the residential neighborhood's alleged transition out of blight, transformation into a *de facto* mixed-use zone, and lack of available commercial space for an endeavor that would continue blight elimination. In addition to the fact that he may have waived an opportunity to rely on some of these factors for failure to raise them before the

ZBA,[5] they are not necessarily determinative of unnecessary hardship. Time may effect changes to a once unburdened property thereby burdening it with a previously non-existent unnecessary hardship. *Liberties Lofts LLC*, 182 A.3d at 518-19. However, the failure of the City to update its zoning and the consequences of that lapse should not justify granting variances in the absence of the requisite unnecessary hardship thereby resulting in piecemeal, *de facto* rezoning.

In any event, Applicant erroneously relies on *Marshall v. City of Philadelphia*, 97 A.3d 323 (Pa. 2014), and *Liberties Lofts LLC* as support for the proposition that efforts to reduce blight and/or a change in the property's surrounding area always warrant zoning relief. In *Marshall*, the building at issue was vacant, in need of repair, and provided no community benefit. In *Liberties Lofts LLC*, the building was "a mostly vacant, dilapidated warehouse, [was] valueless as zoned or could only be converted to a permitted use at a prohibitive expense[.]" 182 A.3d at 534. In neither case did the ZBA base its hardship determination solely on the change in the surrounding neighborhood and the respective property's lack of marketability. Additionally, there is no indication in the present case that the subject property is valueless as zoned and can only be converted to a single-family home at prohibitive expense.

Furthermore, the fact that Glass rescued the once dilapidated adjacent property and transformed it into a viable property does not warrant the zoning relief requested for the subject property. Where, as here, the objectors challenge an application for variances necessary for a project outside of the permitted zoning, an applicant's positive contributions to the neighborhood, including the presence of a

---

[5] The alleged inability to expand a commercial endeavor in a growing neighborhood is not synonymous with the alleged inability to do so in a changing neighborhood or one transitioning out of blight.

11

PIDC next door, cannot alone serve as substantial evidence for zoning relief. Absent rezoning, Glass was required to meet the criteria set forth in the Zoning Code for the requested variances.

Finally, the fact that Glass wants to use the subject property to expand the next-door coffee shop and transform it into a larger sit-down restaurant does not constitute an unnecessary hardship on the property itself but rather an alleged hardship on him personally. A variance, especially a use variance, is appropriate only where the property, not the person, is subject to the hardship. *Soc'y Hill Civic Ass'n v. Phila. Zoning Bd. of Adjustment*, 42 A.3d 1178, 1188 (Pa. Cmwlth. 2012). It remains true that "[t]he burden on an applicant seeking a variance is a heavy one[.]" *Liberties Lofts LLC*, 182 A.3d at 530.

Accordingly, we reverse.[6]

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[6] In light of our determination as to the use variances, we need not address the dimensional variances.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Madeline Shikomba, individually and as : \
an officer of North of Washington : \
Avenue Coalition, Vashty Bandy, : \
William Smith, Annette Barberi, : \
Zheng Rong, : \
     Appellants : \
          : \
    v. :  No. 1667 C.D. 2018 \
          : \
Philadelphia Zoning Board of : \
Adjustment and KOJEPX LLC :

## **O R D E R**

   AND NOW, this 27th day of April, 2021, the order of the Court of Common Pleas of Philadelphia County is hereby REVERSED.

        _____

        **BONNIE BRIGANCE LEADBETTER,** \
        President Judge Emerita